UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERAMY M. M.,<br>    Plaintiff,<br>v.<br>KILOLO KIJAKAZI, et al.,<br>    Defendants. | Case No. 23-cv-02987-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 10, 14 |

Plaintiff Jeramy M. M. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied his application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants Plaintiff's motion and denies the Commissioner's motion.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits on January 23, 2020, alleging disability beginning January 1, 1990. Administrative Record ("AR") 298-308. The application was initially denied on October 19, 2020 and again on reconsideration on February 10, 2021. An Administrative Law Judge ("ALJ") held a telephonic hearing on February 24, 2022. At the hearing, the claimant, through his representative, amended the alleged onset date to August 21, 2006. AR 52-53. The ALJ issued an unfavorable decision on April 20, 2022. AR 77-94. The ALJ determined that Plaintiff has the following severe impairments: left shoulder osteoarthritis status post reconstruction, asthma, cognitive disorder, major depressive disorder ("MDD"), generalized anxiety disorder ("GAD"), post-traumatic stress disorder ("PTSD"), and bipolar disorder. AR 18.

The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

> [He can] perform light work as defined in 20 CFR [§] 404.1567(b) and 416.967(b) except the individual can only occasionally push/pull with the left upper extremity. The individual cannot climb ladders, ropes, or scaffolds and can only occasionally crawl. The individual is limited to occasional overhead reaching with the left upper extremity and frequent other reaching with the left upper extremity. The individual is limited to frequent handling and fingering with the left upper extremity. The individual must avoid concentrated exposure to pulmonary irritants such as dust, fumes, and gases. The individual must avoid even moderate exposure to hazards such as unprotected heights and moving machinery. The individual is limited to performing simple routine tasks with only occasional interaction with coworkers, supervisors and the public.

AR 20.

Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform jobs existing in the economy, including mail sorter, linen folder, and night cleaner, the ALJ concluded that Plaintiff is not disabled.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g). [Docket No. 1.]

## II.     ISSUE FOR REVIEW

Did the ALJ err in weighing the medical evidence?

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the district court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

1    If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV.   DISCUSSION

### A.   Legal Standard

Plaintiff filed an application for disability benefits after March 27, 2017. Therefore, the court analyzes the claim under the Social Security Administration's ("SSA") regulations and Social Security Rulings regarding the evaluation of medical opinion evidence that became applicable as of that date. This includes SSR 96-2p, "Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions." *See Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, SSR 96-2P (S.S.A. Mar. 27, 2017). Under the new regulations, the SSA will no longer give "any specific evidentiary weight, including controlling weight," to medical opinions or prior administrative medical findings, including those from treating physicians. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). Instead, the SSA must evaluate the "persuasiveness" of all medical opinions based on several factors, including supportability, consistency, the source's relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, whether the source has examined the claimant, any specialization, and other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. 20 C.F.R. § 404.1520c(a), (c), 20 C.F.R. § 416.920c(a), (c). The two most important factors in determining the persuasiveness of medical opinions are consistency and supportability. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 416.920c(a).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how

[they] considered the medical opinions' and 'how persuasive [they] find all of the medical opinions." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. "The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings. *Id*. (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)) (internal citations omitted); *see also* 20 C.F.R. § 416.920c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92; *see also* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be"). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be").

When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to "provid[e] an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

**B.     Analysis**

Plaintiff contends the ALJ erred in finding the opinions of Tania Shertock, Ph.D., only partially persuasive.

On January 30, 2022, Plaintiff was referred for a psychological evaluation by the Department of Social Services to assist in the determination of his disability claim. AR 2803. Shertock was his examiner. She noted that Plaintiff was the sole source of information for the examination, but he appeared to be a reliable historian. *Id.* She observed that Plaintiff's attitude and behavior were pleasant and cooperative; that he had normal affect, speech, and perception; that his thought process was grossly logical, organized, and coherent; and he did not appear

distracted. AR 2804-2805. He was able to repeat 5 digits forward and 3 digits backwards, as well as count backwards from 20 (taking 18 seconds), and maintained persistence in all activities. AR 2805. However, he was unable to recite the alphabet or complete serial 3s. *Id.* Shertock stated that Plaintiff's overall intellectual ability appeared to be within the mild range of intellectual disability and that his memory functioning was borderline. AR 2806.

Shertock opined that Plaintiff was capable of understanding, remembering, and carrying out simple instructions. AR 2806. She also opined he had moderate limitations in the following areas: Understand, remember, and carry out complex instructions; Maintain attention and concentration for the duration of the evaluation; Maintain adequate pace while completing tasks; Withstand the stress of an eight-hour day; Maintain adequate persistence while completing tasks; Ability to endure the stress of the interview; and Ability to adapt to changes in routine work-related settings. *Id.* She opined he had a marked limitation in the ability to complete a normal workday or workweek without interruptions from his psychiatric condition. *Id.* In a check box form, Shertock also noted that Plaintiff had extreme limitations in his ability to understand, remember, and carry out complex instructions; to make judgments on complex work-related decisions; to interact appropriately with coworkers; and to respond appropriately to usual work situations and changes in the work setting. AR 2812-2813. In handwritten notes, Shertock explained that Plaintiff has difficulty concentrating because of his mental conditions and that he has had extreme interpersonal problems related to his anger and depression. *Id.* Shertock also observed that Plaintiff experiences periods of decompensation with exacerbation and increase of symptoms, manifested in difficulties in performing activities of daily living, maintaining social relationships, and inability to maintain persistence, concentration and pace. AR 2804.

The ALJ found Shertock's opinions only partially persuasive based on inconsistency. The ALJ held that "[m]arked and extreme limitations are inconsistent with treatment records which show mostly normal mental status examinations. The opinions are inconsistent with under the table work activity in landscaping, plumbing and electrical." AR 23.

To reject an examining doctor's opinion as inconsistent, the ALJ must provide an explanation "supported by substantial evidence." *Woods*, 32 F.4th at 792. In finding "mostly

5

1    normal" mental status, the ALJ appeared to rely solely on Plaintiff's 2020-2021 treatment records
2    from UCSF Health, McKinleyville Community Health Center, and North American Mental Health
3    Services.  AR 21-22.
4        To evaluate the ALJ's findings on appeal, the court begins by reviewing those cited
5    records to determine if they constitute "substantial evidence" that Plaintiff's mental status is
6    "mostly normal."  With respect to USCF Health (19F), the records consist of progress notes made
7    in the context of Plaintiff's shoulder surgery (which were not made by his mental health provider).
8    In the Physical Exam section of progress notes dated 10/14/2020, 1/7/2021, 3/17/2021, 4/15/2021,
9    4/29/2021, 6/4/2021, Plaintiff's mental status was listed as "alert" and his behavior was listed as
10   "normal."  AR 2377; 2381; 2384; 2387; 2391; 2395.  However, elsewhere in the USCF treatment
11   record dated 4/5/2021 and 4/19/2021, Plaintiff's more detailed History and Physicals section
12   observed that Plaintiff had decreased concentration and sleep disturbance and was hyperactive.
13   AR 2366-2367; 2369.
14       As to the McKinleyville Community Health Center (22F) records, progress notes from
15   11/19/2020 indicate that Plaintiff was appropriately dressed, had good hygiene, and did not appear
16   to be distressed.  AR 2488.  Plaintiff was alert and oriented, with normal mood, affect and speech.
17   *Id.*  Progress notes from 2/23/2021 indicate that Plaintiff had begun taking Latuda and was feeling
18   less depressed.  AR 2489.  However, on 3/10/2021 Plaintiff attempted to commit suicide by
19   overdosing on 18 tablets of Latuda, his other prescription medication, and alcohol.  AR 2635.
20       Regarding North American Mental Health Services (NAMHS) (23F), Plaintiff began his
21   care on 6/11/2020.  AR 2223.  Progress notes from 8/7/2020 to 11/13/2020 indicate that Plaintiff
22   had stable mood, sleep and appetite.  AR 2509.  He was doing well after being prescribed
23   Gabapentin and attending therapy, although he had ongoing weight loss due to lack of appetite and
24   only ate 1-2 times daily.  *Id.*  On 1/4/2021, however, Plaintiff reported that his mood had
25   decreased and that he had a recent relapse in alcohol, and he requested an increased dosage for his
26   medication.  *Id.*  On 2/12/2021, Plaintiff reported having suicidal thoughts and depressive
27   symptoms such as sadness, worthlessness, and hopelessness; he was prescribed Latuda in addition
28   to the Gabapentin and therapy.  AR 2516.  On 3/16/2021, Plaintiff explained his latest suicide

1    attempt and hospitalization. AR 2517-2518. He reported that with Latuda he was waking up in a
2    better mood but stated that he was "irritated and depressed" and was having "a lot of ups and
3    downs." AR 2518. Plaintiff was prescribed Lamictal and an increased dosage of Latuda. AR
4    2520. On 5/17/2021, Plaintiff continued to have depressive symptoms and mood swings, and
5    reported another relapse in alcohol. AR 2521-2522, 2524. The doctor increased Plaintiff's Latuda
6    and Lamictal dosage. AR 2524.

7    The ALJ acknowledged that Plaintiff had a suicide attempt "in the context of a relapse with
8    alcohol and marijuana," but stated: "Otherwise, mental status examinations have been pretty
9    normal." AR 22. The ALJ cited the fact that Plaintiff was able to express understanding of his
10   treatment. The ALJ also found that the medical records do not indicate any concerns about
11   Plaintiff's ability to understand and participate in treatment discussion and plan, or identify any
12   barriers to learning or accommodations that had to be made to ensure understanding. *Id.* The ALJ
13   found that this "supports some mental limitations but they are not totally disabling." *Id.*

14   The ALJ erred in concluding that Plaintiff's mental status examinations were "pretty
15   normal." The ALJ's brief references to certain progress notes are not substantial evidence of
16   Plaintiff's ability to complete a normal workday or workweek; to make complex work-related
17   decisions; or to interact appropriately with coworkers. Notably, during the 2020 to 2021 timeframe
18   examined by the ALJ, Plaintiff attempted to commit suicide. AR 2635. The ALJ isolates the March
19   2021 suicide attempt and effectively treats it as an outlier, but ignores that this was at least the third
20   documented suicide attempt since Plaintiff's alleged 2006 onset date. Moreover, progress notes
21   from NAMHS make clear that Plaintiff was still experiencing depressive symptoms and mood
22   swings months after his March 2021 suicide attempt, and his doctor was continuously adjusting his
23   medication. AR 2524. The record also indicates that Plaintiff is unable to follow his treatment plan
24   himself. After his March 2021 suicide attempt, Plaintiff's wife started managing his medication.
25   AR 61. Plaintiff also missed several NAMHS appointments because he was not able to remember
26   them. AR 67. The ALJ glosses over these parts of the 2020-2021 record without explanation. AR
27   21-22. In sum, the treatment records described by the ALJ are not substantial evidence of Plaintiff's
28   mental status being "normal."

The ALJ also erred by failing to consider any of Plaintiff's medical or other records from before 2019. The ALJ focused solely on records after 2019 because "the claimant previously received supplemental security income and child's insurance benefits until they were ceased on March 26, 2019." AR 15. Neither the ALJ nor the Commissioner provide any law to support such a limitation on which records to consider. Rather, the Commissioner's brief appears to concede that the relevant period for this case is after August 21, 2006, the alleged onset date of Plaintiff's disability. [Docket No. 14 (Defs. Brief) at 3.] The court has reviewed Plaintiff's records since 2006 and finds that they are not inconsistent with Shertock's opinions.

In 2007, by the time he was 23, Plaintiff already had a long history of psychiatric hospitalizations, criminal arrests, self-harm, and violent outbursts. AR 675-676. In a psychological evaluation by Michael M. Ramirez, Psy.D. in 2007, Ramirez found that Plaintiff experienced episodes of emotional decompensation accompanied by a loss of adaptive functioning more than three times a year, each lasting for at least two weeks, upsetting the coordination of duties in a normal work-like setting. AR 687. Ramirez opined that Plaintiff had marked impairment in all areas of his ability to do work-related activities, including the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks. AR 687; 691-692. A comprehensive psychiatric evaluation in 2011 by Richard Palmer, Ph.D. found that, although Plaintiff was able to adequately perform one or two step simple repetitive tasks, he had poor ability to accept instructions from supervisors and interact with coworkers and the public, had poor ability to maintain regular attendance, had poor ability to complete a normal workday or workweek without interruptions from a psychiatric condition, and had poor ability to handle normal work related stress from a competitive work environment. AR 701. Palmer opined that Plaintiff's condition appeared to be chronic. *Id.* Another psychological evaluation in 2013 by Ramirez found that Plaintiff had borderline intellectual functioning with inability to perform tasks with adequate judgment, "limiting his capacity for interacting fully with his environment, as well as for maintaining the personal and social responsibilities to satisfy the interpersonal side of adaptive behavior." AR 716. In 2014, Plaintiff was homeless and experiencing suicidal ideation. AR 1280. When Humboldt County Mental Health (HCMH) refused to accept him for inpatient treatment, he

became hostile, banged his head on the wall, and had to be escorted out of the building by police. *Id.* In 2017, Plaintiff had at least two suicide attempts: once by lighting a fire in his apartment's bathroom (7/12/2017), and once by slicing his neck with a razor blade (12/16/2017). AR 723; 1178. After the fire incident, Plaintiff was admitted at HCMH, where he again began banging his head against the door when agitated. AR 1182. On 12/19/2017, Plaintiff was again admitted to HCMH for causing a disturbance and threatening to beat his roommate with a baseball bat. AR 1190.

The ALJ does not address these records and instead focuses on a narrow time period in 2020 and 2021. The Ninth Circuit has recognized that "[c]ycles of improvement and debilitating symptoms are a common occurrence," and cautioned that it is "error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). The ALJ found that Shertock's opinions were inconsistent with a few treatment records from a few months in late 2020 and early 2021. But viewing the evidence as a whole from the alleged onset date, this brief period of relative stability appears to be part of a cycle of improvement and debilitating symptoms. Moreover, the 2020 and 2021 treatment records still include notes consistent with Shertock's opinions, such as UCSF records indicating decreased concentration and hyperactivity, AR 2366-2367, NAMHS records indicating ongoing depressive symptoms and mood swings, AR 2521-2522, and the March 2021 suicide attempt, AR 2518. In sum, the ALJ failed to "provid[e] an explanation supported by substantial evidence" for the finding that Plaintiff's mental status is mostly normal and for discounting Shertock's opinion as inconsistent with the medical record. *See Woods*, 32 F.4th at 792.

The ALJ also cites to NAMHS records in which Plaintiff reported that his current occupation was "underneath the table" landscaping, plumbing, and electricity. AR 22; 2510. The NAMHS notes do not elaborate on what Plaintiff meant by this. It is unclear how often or to what extent Plaintiff was doing this work, or even if he was earning any money. The ALJ apparently made an

unexpressed assumption that Plaintiff was able to perform a significant amount of "under the table" work, even though the record contains examples that caution against such an assumption. For example, in Plaintiff's UCSF Health records, he reported that his occupation was working at a clean and sober house. AR 2376. Plaintiff clarified at the administrative hearing that he only worked this job a few hours a month for less than $50 a month. AR 56-57. If his "under the table" work was at a similar level as his work at the clean and sober house (i.e., only a few hours a month), then it would not be inconsistent with a marked impairment in ability to complete a normal workday or workweek. In another example, Plaintiff was employed once through a high school work experience program at a local hardware and lumber supply for eight months but was fired for "defiant and oppositional attitudes and behaviors." AR 675. After high school he was employed through a work training program but was fired due to "inappropriate behavior." AR 697. These records are all consistent with Shertock's findings of extreme limitations in responding appropriately to usual work situations and interacting appropriately with coworkers.

The Commissioner's brief makes an additional argument that Shertock's opinion is only partially persuasive because it was not sufficiently supported. Defs. Brief 2. The ALJ does not make any reference to supportability. AR 22-23. Therefore, the court does not consider the supportability of Shertock's opinion. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (The court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations.").

Accordingly, the ALJ erred in finding Shertock's opinion only partially persuasive.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: September 6, 2024

Donna M. Ryu
Chief Magistrate Judge